# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>WAYNE ERIC PUFFER,<br><br>      Debtor. | Chapter 7<br>Case No. 08-30290 |

### MEMORANDUM OF DECISION

The "Application of L. Jed Berliner for Approval of Compensation and Expenses as Counsel to the Debtor" (the "Fee Application") returns to this Court on remand from the United States District Court for the District of Massachusetts to consider whether "special circumstances" existed in the bankruptcy case of Wayne Eric Puffer (the "Debtor") to justify the filing of a fee-only Chapter 13 plan.[1]  This Court finds none.

I. FACTS AND TRAVEL OF THE CASE

With the benefit of an evidentiary hearing at which the Debtor and attorney L. Jed Berliner ("Attorney Berliner") testified[2] and the Debtor's affidavit, dated October 22, 2009 (the "Affidavit"), the following are the Court's findings of fact,

---

[1] The First Circuit Court of Appeals has used this term to refer to a Chapter 13 plan which "pays the debtor's lawyer and the trustee their professional fees but leaves the general creditors holding an empty (or nearly empty) bag." In re Puffer, 674 F.3d 78, 81 (1st Cir. 2012).  Because of both the strictures of *stare decisis* and the aptness of this definition, this Court will use the term in the same way.

[2] Upon remand to this Court, Attorney Berliner was offered and he accepted the opportunity to present new evidence that might inform the Court's determination.

1

pursuant to Bankruptcy Rule 7052[3], as made applicable to this contested matter pursuant to Bankruptcy Rule 9014.

Sometime in 2006, the Debtor recognized himself to be in financial difficulty. He was then receiving what he considered to be harassing telephone calls and letters from creditors attempting to collect on approximately $15,000 of unsecured debt. He decided to explore bankruptcy as a remedy. The Debtor searched on the internet for available attorneys in the area, but claims that he could find no one other than Attorney Berliner willing to file a bankruptcy case for the money which the Debtor had available.[4]

On or around January 11, 2007, the Debtor met with Attorney Berliner (the "January 2007 meeting"). At that meeting, the Debtor described his financial situation to Attorney Berliner: The Debtor was then approximately 32-years-old and living with his girlfriend, their 3-year-old son and his girlfriend's two daughters. He owed approximately $15,000 in unsecured debt. A truck and some tools were his only meaningful assets. The Debtor held two jobs—one as a service technician for a local car dealership and one as a part-time banquet server. His average gross monthly income at that time was $2,355.38; his net income, $2,083.88; and his average monthly expenses $1,983.88. According to

---

[3] All references to the "Bankruptcy Code" or to Code sections are to the Bankruptcy Code unless otherwise specified, 11 U.S.C. §§ 101 et seq.; all references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[4] Since the Debtor also testified that he met with no other attorneys before or after meeting with Attorney Berliner, the Debtor apparently reached this conclusion solely or primarily as a result of telephone inquiries with potential candidates for his representation.

2

the Affidavit, those income figures included an anticipated tax refund which he pro-rated as $158.50 per month.

Attorney Berliner recommended that the Debtor file a bankruptcy case under Chapter 7 of the Bankruptcy Code and quoted his fee for that work. The Debtor deemed that sum to be more than he could accommodate, and Attorney Berliner was not then retained. The Debtor testified that he did not ask Attorney Berliner at the January 2007 meeting if Attorney Berliner would represent him at a reduced fee, if Attorney Berliner knew of any other attorneys in the area who could be of assistance to him in filing a Chapter 7 at lower cost, if there were any legal services agencies that might be of assistance, or if he could file a Chapter 7 case without the benefit of counsel. And Attorney Berliner suggested no such alternatives to him.

Soon after the January 2007 meeting, the Debtor's truck was repossessed. That development prompted the Debtor to again contact Attorney Berliner. Sometime between late March and early April of 2007, the Debtor visited with Attorney Berliner for a second time. It was at that meeting that Attorney Berliner presented the Debtor with the option of filing under Chapter 13 as an alternative to Chapter 7. A Chapter 7, Attorney Berliner explained, would necessitate payment in advance of $2,250.00, including costs and services necessary to redeem the lost truck. However, if the Debtor filed under Chapter 13, he would be able to afford Attorney Berliner's fees estimated at $3,000, plus $1,100 in costs. The Debtor could pay him only a $500 retainer upfront and then $100 per month over the life of a Chapter 13 plan until the balance was paid.

3

That sealed the bargain, and on April 13, 2007, the Debtor retained Attorney Berliner, paying him the $500 retainer (made predominantly with borrowed funds).[5]

On February 29, 2008—about ten months after Attorney Berliner's retention—the Debtor filed a Chapter 13 petition with this Court.[6] The Debtor's Schedule A—Real Property, revealed no ownership interests in any real property. In his Schedule B—Personal Property, the Debtor listed assets with a total value of $4,449.49— a 1985 BMW Sedan valued at $1,000 and tools and a toolbox valued at $1,200, with the remaining items of *de minimis* or uncertain value.[7] In the Debtor's Schedule C—Property Claimed as Exempt, he claimed as exempt the full value of all of these assets. In Schedule D—Creditors Holding Secured Claims, the Debtor listed no creditors. Similarly, no creditors were listed in Schedule E—Creditors Holding Unsecured Priority Claims. In Schedule F— Creditors Holding Unsecured Nonpriority Claims, the Debtor listed a total of $14,836.20 in unsecured debt, most on account of credit cards and personal loans. In Schedule I—Current Income, the Debtor represented his gross monthly income to be $2,083.88; and in Schedule J—Expenses, he represented his total monthly expenses to be $1,983.88, leaving the Debtor with exactly the monthly

---

[5] The Debtor testified that as of the date of the instant evidentiary hearing, he had still not paid back the borrowed funds.

[6] The Debtor attributed the delay to his difficulty accumulating the information necessary to file the bankruptcy case because he and his girlfriend had by then separated and his girlfriend had much of the information he required.

[7] Certain tax refunds and a claim against GMAC were listed with an "undetermined" value.

4

amount necessary to make payments under the plan, almost all of the benefit of which would subsequently be remitted to Attorney Berliner.  The 36-month plan proposed monthly payments of $100 (the "Plan") which would pay over time the $2,949 stated balance of Attorney Berliner's fees and costs, a <u>total</u> payment of $300 to unsecured creditors (or 2% of the unsecured claims) and the commission of the Chapter 13 trustee.

A hearing was held on July 23, 2009 to address the propriety of the Debtor's "fee-only" Plan.  At the conclusion of that hearing, this Court took the matter under advisement allowing the Trustee and Attorney Berliner further opportunity to brief the issue.  Attached to his "Brief Supporting Confirmation of the Chapter 13 Plan," Attorney Berliner included the Affidavit, which, *inter alia*, stated the Debtor's monthly net income then to be $1,299.99.[8]  On July 9, 2010, this Court issued an Order denying confirmation of the Plan on the grounds that both the Plan and the case itself were not filed in good faith.  Accordingly, this Court ordered the Debtor to file either an amended Chapter 13 plan or a motion to convert the case to Chapter 7, or else have the case dismissed.  This Court additionally ordered Attorney Berliner to file an application for approval of his fees and costs relating to the Debtor's case.

On August 8, 2010, the Debtor filed a Notice of Voluntary Conversion to Chapter 7.  And on September 3, 2010, Attorney Berliner filed his Fee Application requesting that this Court approve $2,872 in fees and expenses.

---

[8] The Debtor did not file amended Schedules I or J prior to or after the filing of the Proposed Confirmation Order to account for the $783.89 decrease in his monthly income.

5

This Court allowed the Fee Application, but only in the amount of $299, citing its reasoning in the case of In re Buck, 432 B.R. 13 (Bankr. D. Mass. 2010) (the "Fee Order") which, not so coincidentally, also involved fee requests by Attorney Berliner with respect to two related fee-only Chapter 13 plans.  Attorney Berliner appealed the Fee Order to the United States District Court for the District of Massachusetts (the "District Court").  On July 8, 2011, the District Court affirmed the Fee Order.  See In re Puffer, 453 B.R. 14 (D. Mass. 2011). Attorney Berliner appealed further to the First Circuit Court of Appeals (the "First Circuit").

On March 22, 2012, the First Circuit reversed the District Court's affirmance of the Fee Order, holding that "[w]hile fee-only plans should not be used as a matter of course, there may be special circumstances, albeit relatively rare, in which this type of odd arrangement is justified." In re Puffer, 674 F.3d 78, 83 (1st Cir. 2012).  Accordingly, the First Circuit remanded the matter to the District Court with instructions to vacate the Fee Order itself and remand back to this Court for further proceedings to consider whether such "special circumstances" existed in the Debtor's case. Id. at 84.

On June 28, 2012, at Attorney Berliner's request, this Court held an evidentiary hearing on the Fee Application (the "Evidentiary Hearing").  Two exhibits were entered into evidence and two witnesses (Attorney Berliner and the Debtor) presented testimony.  At the conclusion of the hearing, this Court took the matter under advisement and offered the parties an opportunity to submit further briefs or arguments.  Both Attorney Berliner and the Trustee declined.  A week later, Attorney Berliner changed his mind, and filed a "Motion to File

6

Supplemental Statement," which provided arguments on four issues he felt relevant to this Court's decision.[9] The Trustee filed an Opposition. The Court allowed the Supplemental Statement, but only insofar as it provided legal arguments and reasoning based on facts proven at the Evidentiary Hearing, and granted the Trustee an opportunity to respond. The Trustee did so.

II.    POSITIONS OF THE PARTIES

Attorney Berliner asserts several special circumstances to justify the Debtor's fee-only Chapter 13 Plan: (1) the harassing phone calls and letters the Debtor was receiving from creditors at his home and at his place of employment; (2) the subjective stress which the Debtor claimed to be suffering as a result of those phone calls and letters; (3) the tension between the Debtor's Schedules I and J and the Affidavit; (4) the lack of a standard in Massachusetts at the time of filing with respect to fee-only Chapter 13 plans; (5) Attorney Berliner's hope that the Court would accept a standard with respect to fee-only Chapter 13 plans; (6) the costs which Attorney Berliner has incurred as a result of his appeal of the Fee Order; and (7) the standards established pursuant to the First Circuit's remand.

The Trustee denies that any special circumstances justified filing the Debtor's fee-only Plan. First, the Trustee argues that the Debtor failed to

---

[9] Attorney Berliner filed a "Further Supplemental Statement" on August 20, 2012 calling this Court's attention to the recent decision of the Fifth Circuit Court of Appeals in Sikes v. Crager (In re Crager), wherein the Fifth Circuit applied Louisiana's presumptive no-look fee to fee-only Chapter 13 cases. 2012 U.S. App. LEXIS 17244 (5th Cir. Aug. 16, 2012); 2012 WL 3518473 (5th Cir. Aug. 16, 2012). The case is obviously of interest; however, this Court respectfully disagrees with its conclusions, as have many other courts. See In re Buck, 432 B.R. at 22 n.14 (collecting cases). More importantly, this Court is bound only by the decisions of the First Circuit and its most recent rulings on the issue. See In re Puffer, 674 F.3d 78.

7

establish that he had a pressing need for Attorney Berliner's services.  The Trustee points to the Debtor's assets at the time of filing, which totaled only a little over $2,000, his earnings—some $2,000 a month—and the fact that he was then living with his parents.  Second, the Trustee doubts the Debtor's inability to secure adequate representation without resorting to a fee-only plan.  The Trustee emphasizes the possible alternatives that were available to the Debtor (e.g., a reduced fee arrangement; the availability of legal assistance from others at a reduced fee; or a Chapter 7 case filing without the benefit of counsel), none of which he and Attorney Berliner even explored.  Third, the Trustee submits that it was not in fact infeasible for the Debtor under these circumstances to have filed without the benefit of counsel.

III.  DISCUSSION

    **A.  The Good Faith Requirement**

The Debtor's good faith is a requirement that permeates the Bankruptcy Code and in particular, the confirmation of a Chapter 13 plan.  Section 1325(a)(3) instructs the Court to confirm a plan if "… the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).  Section 1325(a)(7) requires the Court additionally to find that "the action of the debtor in filing the petition was in good faith."  11 U.S.C. § 1325(a)(7).  Despite the Code's emphasis that it be present, neither § 1325(a) nor any other provision of the Code defines "good faith."

The First Circuit has adopted "a totality of circumstances approach to adjudicating good faith … inquiries under section 1325." In re Puffer, 674 F.3d at 82. This approach requires a court to engage in something comparable to a "holistic balancing of relevant factors" when determining the presence or absence of good faith. Id. "[R]eluctant to read per se limitations into section 1325's good faith calculus," the First Circuit found that a fee-only Chapter 13 plan standing alone cannot constitute bad faith. Id. That holding, however, was not an invitation for debtors to file fee-only plans as a "matter of course." Puffer, 674 F.3d at 83. Rather, in the First Circuit's view, only upon a showing of "special circumstances" in "relatively rare" instances would a fee-only plan meet the Code's good faith requirement. Id. Accordingly, this Court must examine whether "special circumstances" existed in this Debtor's case to justify Attorney Berliner's recommendation that the Debtor file a Chapter 13 case with a fee-only plan.

### i. Special Circumstances

The Debtor "carries a heavy burden of demonstrating special circumstances that justify [his] submission" of a fee-only plan. Puffer, 674 F.3d at 83. And while the First Circuit has left undefined those "special circumstances" that might justify such a plan, it did make clear that they exist only in "relatively rare" instances. Id.

There can be no exhaustive definition of the term "special circumstances," and that is perhaps the theme of the First Circuit's Puffer decision; i.e., that a court of equity should be loath to employ the word "never," expressly or impliedly.

9

Yet the First Circuit majority went to considerable lengths to emphasize that the circumstances which would justify a fee-only Chapter 13 plan should be far from the norm, indeed "rare."

This Debtor's case presents no such "special" circumstances. At the time the Debtor filed his Chapter 13 case he was approximately 32-years-old, single and in good health. He was employed, but claimed to have had disposable income of only $100 per month.[10] The Debtor did not own a home; he lived with his parents. His significant assets were a car and some tools – a total value of approximately $2,200. The Debtor's only debts were unsecured and totaled approximately $15,000.00. The Debtor paid Attorney Berliner a $500 retainer comprised of borrowed funds and then waited 10 months to file the case; and the plan that resulted would have paid the balance of Attorney Berliner's fees and expenses in full, and not much else.

The Court does not make light of the Debtor's mindset when he met with Attorney Berliner that day in January 2007 or again after the repossession of his vehicle. Harassing phone calls and letters from creditors are undoubtedly frightening and stressful and the loss of a cherished or necessary asset by a person of limited means is obviously quite painful; but unfortunately, these circumstances are quite common among those who require bankruptcy relief. And while the effect of that stress may have been significant, as it is for almost all

---

[10] This figure appears itself to be fantastical. The Debtor's Schedule J—Current Expenditures of Individual Debtor(s), included no sum for the Debtor's medical or dental expenses or health insurance. Furthermore, according to the Affidavit and Schedule J, the Debtor's professed income included a proration of expected tax refunds. But tax refunds appear only once per year. In the meantime, the Debtor would be short on a cash basis by $158.50 per month.

debtors, it was apparently not so overwhelming for this debtor as to cause him to expedite his efforts to get the Chapter 13 case filed.  The Debtor tolerated a 10-month delay in seeking the respite which is now claimed to have been so desperately required.

**B.  The Fee Application**

Section 330 of the Code iterates the general standards in a Chapter 13 case by which the Court

> may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor.

§ 330(a)(4)(B).  In making this determination, the Court must consider

> the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).  Courts in this Circuit employ the lodestar method when deciding the reasonableness of an attorney's fee application.  See In re Buck, 432 B.R. at 23; Lopez v. Consejo de Titulares del Condominio Carolina (In re Lopez), 405 B.R. 24, 30 (1st Cir. BAP 2009).  In In re Lopez, the First Circuit BAP explained how the lodestar method works:

> The lodestar method entails multiplying the number of hours productively spent by a reasonable hourly rate.  In determining the number of hours productively spent, courts should eliminate time that was unreasonably, unnecessarily, or inefficiently devoted to the case. Courts determine reasonable hourly rates based on the nature of the work, the locality where it was performed, the lawyer's qualifications, and other pertinent criteria.

405 B.R. at 30 (internal citations omitted).  However, the court's calculations do not end there.  "After calculating the lodestar amount, the court may adjust it, up or down, in light of other considerations, such as the results obtained."  Id. (citations omitted).  Indeed, the Court may "award compensation that is less than the amount of compensation that is requested."  11 U.S.C. § 330(a)(2).

But the issue here is not so much the time and effort expended by Attorney Berliner, as is the propriety of his recommendation that this debtor file a Chapter 13 case.[11]  And even if the lodestar methodology had relevance, the First Circuit has recently noted:

---

[11] As applied to the propriety of fee-only plans, the District Court explained that

> [where] the issue before [the Court is] the propriety of the Chapter 13 selection in the first place and the ultimate 'fee only' plan, the typical lodestar mathematics [has] little relevance to [the Court's] analysis.

12

> [T]he lodestar method, which is designed to 'provide[ ] a flexible paradigm [is] not meant to bind the *nisi prius* court to any single way of calculating the number of hours reasonably expended.' Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 526–27 (1st Cir. 1991) (quoting United States v. Metro. Dist. Comm'n, 847 F.2d 12, 16 (1st Cir. 1988)). Given the nature of this paradigm, a bankruptcy court need not march mechanically through a checklist of the section 330 factors when fashioning a fee award. See Metro. Dist. Comm'n, 847 F.2d at 15 (warning that mechanical approaches to fee awards 'sacrifice substance on the altar of form'); see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 308 (1st Cir. 1995) (stating that lodestar method should not 'be applied in a formulaic or mechanical fashion' (internal quotation marks omitted)). Rather, it suffices if the court makes a fee calculation that takes the section 330 factors fairly into account.

In re Sullivan, 674 F.3d 65, 69 (1st Cir. 2012).

Having found no special circumstances to justify the filing of the Debtor's Chapter 13 case and fee-only plan, the Court similarly cannot find the requested fees associated with such a case are justified in any amount. The Debtor, notwithstanding what he might have been advised to the contrary, was in fact prejudiced by the Chapter 13 filing. Had the Debtor filed under Chapter 7, he likely would have received a discharge of his debts in mid to late 2008. But, because of the failed attempt to consummate a Chapter 13 plan and the subsequent conversion of the case to Chapter 7, he did not receive his discharge until March of 2011—over 2 1/2 years later. And, even if Chapter 13 had been an appropriate alternative to Chapter 7, the Plan would—to the objective observer—have been doomed from the outset: the monthly surplus was thin (if not illusory), the monthly cash available overstated and the monthly expenses not fully accounted for. When the Chapter 13 case inevitably failed, the Debtor

---

In re Puffer, 453 B.R. at 19.  Nothing in the First Circuit's reversal indicates a rejection of that reasoning.

might then have converted the case to Chapter 7, but again at the cost of a delay in his Chapter 7 discharge. According to the testimony at the Evidentiary Hearing, the Debtor was not advised that a reduced fee might be obtained from another attorney, that he should consider seeking free or reduced fee services from agencies which (notwithstanding the strain of recent budget cuts) might be able to help him or that in this uncomplicated case, filing without an attorney was a possibility.

Instead, from the only attorney he thought was available to help him, the Debtor was quoted a fee nearly exceeding the total value of his assets and advised to employ a methodology not only untested, but well designed to ensure that when the plan failed, Attorney Berliner would receive most if not all of his fees. Such a Chapter 13 was not so much a remedy for the Debtor as it was a fee enhancement and collection device for Attorney Berliner, similar to that used by Attorney Berliner in the cases of In re Buck (Docket No. 08-43918) and In re Groccia (Docket No. 08-43919) as reported by this Court in its decision In re Buck, 432 B.R. 13.[12] As was true in the Buck and Groccia cases, any award of compensation to Attorney Berliner in this case would do nothing but encourage and reward conduct that the Court deems wholly inappropriate.

Finally, Attorney Berliner makes two more arguments. First, he says that he has been prejudiced by the previous lack of a standard in this judicial district and Circuit with respect to fee-only Chapter 13 plans. To this, the Court responds that it should have been apparent, as a matter of common sense, that

---

[12] This Court's orders disallowing Attorney Berliner's compensation in the Buck and Groccia cases have been appealed to and are currently pending in the District Court.

14

in the absence of at least exigent circumstances, a court of equity would likely not permit an attorney to take advantage of a debtor by putting him or her into a bankruptcy case both inappropriate from a strategic perspective (*inter alia*, in light of the discharge delay) and in which the debtor could not possibly succeed. No announcement of such a standard by this Court, by the District Court or by the First Circuit should have been necessary.

Second, Attorney Berliner complains that he is entitled to compensation for his appellate effort which resulted in the setting of a standard for fee-only plans and remand to this Court. While Attorney Berliner may have succeeded in causing the First Circuit to announce that fee-only Chapter 13 plans are permitted only in special and rare circumstances, he was totally unable to demonstrate those circumstances in the same case once remanded. There were no special circumstances to justify a fee-only Chapter 13 plan in this case; indeed, even were it otherwise, the plan was not feasible from the outset and that should have been obvious to him.

Where a debtor's lack of good faith in filing a bankruptcy case under any chapter stems primarily from poor advice given by the debtor's attorney, the obstacle to compensation for that attorney on account of the attendant services is, and should be, virtually insurmountable. As this Court has previously noted in a different context: "Clients come to attorneys for a service. Where the service is not provided, or provided poorly, they should not be required to pay for the service…." In re Lafrance, 311 B.R. 1, 25 (Bankr. D. Mass. 2004).

IV.  CONCLUSION

The Court will again allow the Fee Application only in the amount of $299.00—the amount of the Chapter 7 filing fee in 2007.  11 U.S.C. § 330(a)(2).  The balance of the request will be disallowed.  Attorney Berliner will be ordered to remit the balance of his $500.00 retainer ($201.00) to the Chapter 13 trustee, who will then forward same to the Debtor, together with funds which she is holding on his behalf, pursuant to § 1326(a)(2).

An order in conformance with this Memorandum of Decision shall be entered forthwith.

DATE:  September 27, 2012			By the Court,

_____

Henry J. Boroff
United States Bankruptcy Judge